JEANNETTE SIMKO ET AL. *v.* ROY HENRY
ERVIN, TRUSTEE
(15200)

PETERS, C. J., and BORDEN, BERDON, KATZ and PALMER, Js.

Argued April 26—decision released July 25, 1995

*James F. Stapleton*, with whom was *Roy H. Ervin, Jr.*, for the appellant (defendant).

*Vincent M. Simko, Sr.*, for the appellees (plaintiffs).

BORDEN, J. The dispositive issue in this appeal is whether, in order to challenge the conformity of a building with the terms of a variance, the plaintiffs were required to exhaust their administrative remedies before seeking declaratory and injunctive relief in the trial court. The plaintiffs, Jeannette Simko and Valerie Varga, brought this action in the trial court, claiming that the defendant, Roy Henry Ervin, trustee, had failed to comply with a certain condition of a variance that had been granted by the zoning board of appeals of the town of Fairfield (board) for construction of a building on his property. The defendant appeals from the judgment of the trial court[1] granting the plaintiffs' request for injunctive relief and ordering the defendant to remove portions of the building. The defendant claims that the trial court improperly: (1) concluded that the plaintiffs were not required to exhaust their administrative remedies; (2) concluded that the issues in this case are not moot; (3) determined that the building did not constitute a valid nonconforming use; (4) concluded that the building does not comply with the variance;

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

and (5) issued a mandatory injunction. Because we conclude that the plaintiffs were required to exhaust their administrative remedies, we conclude that the trial court lacked subject matter jurisdiction over the case. Accordingly, we reverse the judgment of the trial court and remand the case with direction to dismiss the plaintiffs' complaint.

The following facts and procedural history are undisputed. In June, 1986, the defendant applied to the board for a variance to enlarge an existing dwelling located on Fairfield Beach Road in Fairfield. He proposed to remove the existing one-story house and replace it with a two-story house.[2] The board granted the variance with four conditions, including "[h]ouse to stay within the footprint."[3] The plaintiffs, who own property adjoining that of the defendant, appealed to the trial court from the decision of the board granting the variance. The trial court dismissed the appeal for failure to name the town clerk as a necessary party, and this court affirmed. *Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987) (*Simko I*). The plaintiffs moved for reconsideration and this court, sitting en banc, reaffirmed *Simko I*. *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988) (*Simko II*).[4]

In April, 1988, the plaintiffs requested the director of planning and zoning to review the defendant's building plans in order to determine whether they conformed to the terms of the variance. The plaintiffs' specific concern was that the plans called for construction of a ground level deck as well as a roofed deck off the sec-

[2] The defendant, in his application to the board, described the project as demolition of a one and one-half story house, to be replaced by a two and one-half story house.

[3] The other three conditions of the variance are not at issue in this case.

[4] Subsequently, the legislature enacted legislation overruling, in effect, our decision in the *Simko* cases. See General Statutes § 8-8 (e).

ond floor of the house. The plaintiffs claimed that the decks would not be within the footprint of the original building as required by the variance. On May 10, 1988, on behalf of the director of planning and zoning, the zoning enforcement officer responded, giving his explanation of the board's actions. On May 16, 1988, after examining the building plans, the plaintiffs again wrote to the director of planning and zoning, this time requesting that a cease and desist order be issued to prevent the defendant from proceeding with construction. The zoning enforcement officer denied the request, informing the plaintiffs that the plans submitted to the building department complied with the conditions of the variance. The plaintiffs did not appeal to the board from this action of the zoning enforcement officer.

On August 8, 1988, the plaintiffs filed this action in the trial court, claiming that: (1) the house being built by the defendant was not within the footprint of the original house; (2) the zoning enforcement officer had refused to take any action after the plaintiffs had informed him that the defendant's construction violated the terms of the variance; and (3) the zoning department had illegally issued a certificate of zoning compliance. In addition to seeking a declaration that the house being built was not within the footprint and thereby exceeded the use authorized by the variance, the plaintiffs also sought injunctive relief restraining the defendant from building outside the footprint or exceeding the use allowed by the board. The defendant raised the special defense that the court lacked subject matter jurisdiction because the plaintiffs had not exhausted their administrative appeals.[5]

[5] The defendant also raised five other special defenses, namely, that: (1) the request for injunctive relief was moot because construction of the house had been completed; (2) the completed building was a valid nonconforming use; (3) the zoning enforcement officer and the board were neces-

At trial, the defendant admitted that the decks had been built outside the footprint of the original house, but argued that since the decks were not part of the house, they were not required to be within the footprint. The trial court found that what the defendant characterized as "decks" were, instead, "porches," since they could serve as an outdoor area for seating or walking and were covered by a roof. The court determined that a porch was part of a house rather than a separate entity. Although the term "footprint" was not defined in the zoning regulations, the court found that the term, as used by the board when granting the variance, meant the area of the foundation of the original house as it existed when the defendant had applied for the variance in 1986. Any porches built by the defendant, therefore, had to be restricted to the area of the foundation as it had existed in 1986. The court found that the porches at issue were not within the footprint of the original house, and further found that a four by ten foot protrusion at the rear of the house in which the furnace was located was also not within the footprint. The court found that the porches and the rear protrusion had disturbed the plaintiffs' view, quiet, comfort and privacy, and that the value of Simko's property had been diminished. The court also determined that the plaintiffs could not be fully compensated by money damages. The trial court concluded that the defendant's special defenses were without merit, and that the defendant's conduct had been wilful and wrongful. Accordingly, the court issued a mandatory

sary parties who had not been joined in the action; (4) the plaintiffs came into court with "unclean hands" because they had misrepresented that the zoning enforcement officer had failed to take any action in the case; and (5) the plaintiffs were guilty of laches because they had not brought this action until almost two years had passed after the board had heard the defendant's application, which resulted in prejudice to the defendant because during that time he had removed an existing building and had begun construction of a new building.

injunction ordering the defendant to remove the porches and the rear projection from the house. This appeal followed.

The defendant first claims that the trial court improperly concluded that the plaintiffs were not required to exhaust their administrative remedies before seeking relief in the trial court. We agree.[6]

After their challenge to the board's issuance of the variance was dismissed in *Simko I* and *Simko II*, supra, the plaintiffs requested that the zoning enforcement officer issue a cease and desist order. That request was denied. Instead of appealing from the zoning enforcement officer's decision to the board, in accordance with General Statutes § 8-6 (a) (1),[7] the plaintiffs commenced this action in the trial court. The defendant asserted, as a special defense, that the trial court lacked subject matter jurisdiction because the plaintiffs had failed to exhaust their administrative remedies.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 358–59, 377 A.2d 1099 (1977)." (Internal quotation marks omitted.) *Greater Bridgeport Transit District* v. *Local Union 1336*, 211 Conn. 436, 438, 559 A.2d 1113 (1989); see also *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 350–51, 542 A.2d 672 (1988); *Concerned*

---

[6] Because we conclude that the plaintiffs were required to exhaust their administrative remedies, we need not address the other issues raised by the defendant.

[7] General Statutes § 8-6 provides in relevant part: "POWERS AND DUTIES OF BOARD OF APPEALS. (a) The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

*Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 557, 529 A.2d 666 (1987); *Cummings* v. *Tripp*, 204 Conn. 67, 75, 527 A.2d 230 (1987); *LaCroix* v. *Board of Education*, 199 Conn. 70, 78–80, 505 A.2d 1233 (1986). The exhaustion doctrine "reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." *Greenwich* v. *Kristoff*, 180 Conn. 575, 578, 430 A.2d 1294 (1980). It also "relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." *Owner-Operators Independent Drivers Assn. of America* v. *State*, 209 Conn. 679, 692, 553 A.2d 1104 (1989).

The plaintiffs claim that this case fits within an exception to the exhaustion doctrine that "[a]ny person specifically and materially damaged *by a violation of the zoning ordinances* which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies]." (Emphasis added; internal quotation marks omitted.) *Cummings* v. *Tripp*, supra, 204 Conn. 75; see also *Reynolds* v. *Soffer*, 183 Conn. 67, 69, 438 A.2d 1163 (1981); *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 401, 426 A.2d 784 (1980); accord *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977); *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 482, 138 A. 483 (1927). The plaintiffs assert that, because this is an action for an injunction, they fall within this exception so they need not have exhausted their administrative remedies. We are not persuaded.

In all the cases in which we have applied this exception to the exhaustion requirement, the aggrieved party

claimed that a zoning regulation had been violated. In the present case, however, the plaintiffs have not alleged a violation of a zoning regulation; instead, they claim that the defendant violated the terms of a variance. Although they now assert that a violation of the terms of a variance constitutes a violation of the zoning regulations, at trial they insisted that the zoning regulations were not at issue.[8] We conclude that the specialized knowledge held by a zoning board of appeals with respect to the terms of a variance that it has granted counsels against allowing the plaintiffs to bypass an appeal to that body. Accordingly, we decline to extend our holding in the *Cummings* line of cases to encompass violations of the terms of a variance.

Variances are, in a sense, "the antithesis of zoning." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. Zoning is "regulation by the municipality of the use of the land within the community, and of the buildings and structures which may be located thereon, in accordance with a general plan . . . ." 1 C. Rathkopf, The Law of Zoning and Planning (4th Ed. 1995) § 1.01. General Statutes § 8-2[9] authorizes the

---

[8] At trial, the plaintiffs stated: "[W]e don't allege that any regulations . . . were violated. The regulations are not really at issue in this case. They have not even come into testimony as an exhibit, as being quoted. No witness to this point has yet quoted the zoning regulations of the town of Fairfield."

[9] General Statutes § 8-2 provides in relevant part: "REGULATIONS. (a) The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land . . . . Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district . . . ."

zoning commission of each municipality to regulate, inter alia, the size, location and use of buildings. In accordance with § 8-2, a zoning regulation must be applied uniformly throughout each district. A variance, to the contrary, "constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town. *Burlington* v. *Jencik*, 168 Conn. 506, 508, 362 A.2d 1338 (1975)." *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 206, 658 A.2d 559 (1995).

In recognition of the tension between zoning regulations and variances, the legislature has authorized the issuance of variances only under limited circumstances. General Statutes § 8-6 (a) (3) authorizes zoning boards of appeal to vary the application of the zoning regulations "solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship . . . ."

The statutory requirement that a variance must be supported by a finding of "exceptional difficulty or unusual hardship" imposes on the board the obligation to undertake an extensive factual inquiry before a variance may be granted. Enforcement of the exhaustion requirement will afford the court access to the special knowledge acquired by the board in the pursuit of this inquiry. When the exhaustion requirement has been met, a reviewing court will have before it the record of the agency proceedings, and thus will benefit from the agency's knowledge of the peculiar facts that led the agency to grant the variance.

Furthermore, unlike a zoning regulation, which is of general applicability and for which there may be a body of interpretive decisions, the fact-specific nature of a variance militates against judicial interpretation with-

out the benefit of prior administrative review. Each variance is unique to a particular piece of property and each presents potential sources of ambiguity. The present case illustrates this point, as the meaning of "[h]ouse to stay within the footprint," was central to the disposition of the case. Because the plaintiffs chose not to appeal the zoning enforcement officer's refusal to issue the cease and desist order, the trial court was required to determine what the board had meant by "footprint" and whether the board considered the proposed decks to be part of the house. We are persuaded that the agency that granted the variance, not the trial court, was the most appropriate body, in the first instance, to determine what the agency meant by "[h]ouse to stay within the footprint."

The plaintiffs also claim that they are not required to exhaust administrative appeals because their case falls within the exception to the exhaustion requirement "where the available relief . . . is futile." (Internal quotation marks omitted.) *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995); *Labbe* v. *Pension Commission*, 229 Conn. 801, 812, 643 A.2d 1268 (1994); *Norwich* v. *Norwalk Vault Co.*, 208 Conn. 1, 4, 544 A.2d 152 (1988). The basis for the plaintiffs' claim is that the defendant was the town attorney and allegedly had engaged in ex parte communications with the board, in the form of a letter asking for clarification of the terms of the variance. We conclude that the plaintiffs' mere suspicion of bias on the part of members of the board, without more, is not sufficient to excuse them, on grounds of futility, from the exhaustion requirement.

"It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 429; see, e.g., *Labbe* v. *Pension Com-*

*mission,* supra, 229 Conn. 814; *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979). We recently held that when a party's suspicion of bias on the part of a zoning commission is purely speculative, such a suspicion does not render pursuit of administrative remedies futile. *O & G Industries, Inc.* v. *Planning & Zoning Commission,* supra, 429. We presume that administrative board members acting in an adjudicative capacity are not biased. Id.; *Clisham* v. *Board of Police Commissioners,* 223 Conn. 354, 362, 613 A.2d 254 (1992); *Jutkowitz* v. *Dept. of Health Services,* 220 Conn. 86, 100, 596 A.2d 374 (1991). The plaintiffs' unsupported belief that the members of the board lacked impartiality does not overcome that presumption. We conclude, therefore, that the plaintiffs have not established the necessary factual predicate for the futility exception to the exhaustion requirement.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the case.

In this opinion, PETERS, C. J., and KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. The majority holds that a party is precluded from direct access to the Superior Court for equitable relief in the event that his or her property becomes devalued, or enjoyment of the property is hindered, because an adjoining property owner has exceeded a variance. Indeed, in this case, *Simko III,* as in *Simko I (Simko* v. *Zoning Board of Appeals,* 205 Conn. 413, 533 A.2d 879 [1987]), and *Simko II (Simko* v. *Zoning Board of Appeals,* 206 Conn. 374, 538 A.2d 202 [1988]),[1] the majority unnecessarily prevents

[1] In *Simko I,* supra, 205 Conn. 413, this court affirmed the dismissal of the plaintiffs' administrative appeal challenging the variance, holding that the town clerk, who was not named in the citation, was a necessary party. The case was reconsidered and reaffirmed en banc in *Simko II,* supra, 206 Conn. 374.

the plaintiffs from obtaining judicial review. In my view, this result is contrary to our established precedent.

The plaintiffs, Jeannette Simko and Valerie Varga, brought this action in the Superior Court seeking injunctive relief against the defendant, Roy H. Ervin, trustee, for his alleged violations of a variance granted by the zoning board of appeals of the town of Fairfield. The zoning board of appeals had explicitly conditioned the defendant's variance upon the requirement that the "[h]ouse . . . stay within the footprint." Although the zoning regulations do not define the term "footprint," it is a term that is commonly used, and universally understood, to refer to the boundaries of a building.[2] The trial court found that the defendant had erected

As the majority points out; see footnote 4 of majority opinion; the legislature subsequently overruled *Simko I* and *Simko II* by enacting General Statutes § 8-8 (e), which provides: "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. Service on the chairman or clerk of the board and on the clerk of the municipality shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the chairman or clerk of the board or the clerk of the municipality a necessary party to the appeal."

[2] Indeed, this court and the Appellate Court have used the term "footprint" in this context; *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 79, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); *Gil* v. *Inland Wetlands & Watercourses Agency*, 219 Conn. 404, 408, 416, 593 A.2d 1368 (1991); *Grey* v. *Coastal States Holding Co.*, 22 Conn. App. 497, 502, 578 A.2d 1080, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990); *SSM Associates Ltd.* v. *Plan & Zoning Commission*, 15 Conn. App. 561, 563, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989); and this court has cited to the use of the term "footprint" by zoning authorities; *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 211, 658 A.2d 559 (1995) (quoting from minutes of board meeting granting variance where addition was built upon existing footprint); without feeling compelled to provide any further definition or explanation. Therefore, contrary to the majority's assertion, the meaning is not ambiguous. Furthermore, with the exception of this particular case, the term has never been interpreted to be ambiguous.

several structures outside the footprint and had therefore exceeded his variance. Furthermore, the trial court found that these structures had interfered with the plaintiffs' enjoyment of their property by obstructing their view of Long Island Sound and had diminished the value of Simko's property by $38,600.

The majority concedes that we have consistently held "[a]ny person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation [without exhausting administrative remedies]."[3] (Internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 75, 527 A.2d 230 (1987); *Reynolds* v. *Soffer*, 183 Conn. 67, 69, 438 A.2d 1163 (1981); *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977); *Fitzgerald* v. *Merard Holding Co.*, 106 Conn. 475, 482, 138 A. 483 (1927). Today, for the first time, this court distinguishes between the violation of a zoning regulation and the violation of a variance. According to the majority, if there is a violation of a zoning regulation, the aggrieved party can seek equitable relief. If the property owner violates the bounds of a variance, however, the aggrieved party must, in the majority's view, request that the zoning enforcement officer take enforcement action and upon his failure to do so, appeal to the zoning board of appeals, and if no relief is granted there, then take an administrative appeal to the courts. I disagree with this holding for two reasons.

First, the majority's distinction between the violation of a zoning regulation and the violation of a variance eludes me. A variance constitutes a specific permission to restrictively "act in a manner that is

---

[3] It should be noted that, although this citation refers only to zoning ordinances, the doctrine applies equally to alleged violations of zoning regulations. *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977).

otherwise prohibited under the zoning law . . . ." *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 206, 658 A.2d 559 (1995). It is well established that such a permit "must be reserved for unusual or exceptional circumstances." Id., 206–207. If the grantee of a variance exceeds its specific limits, he is in violation of the zoning regulations. Because the violation of a variance is the equivalent of a violation of a zoning regulation, the plaintiffs are entitled to seek equitable relief by directly enjoining the violation. *Cummings* v. *Tripp*, supra, 204 Conn. 75. Furthermore, because we have clearly held that an injured plaintiff may resort to the courts for equitable relief when the defendant exceeds the bounds of a nonconforming use; *Blum* v. *Lisbon Leasing Corp.*, supra, 173 Conn. 180; it is anomalous to preclude a plaintiff from pursuing the same relief when the defendant has allegedly exceeded the limits of a variance.

Second, the majority fails to recognize the reasons for which this court has provided recourse directly to the Superior Court for injunctive relief. In *Blum* v. *Lisbon Leasing Corp.*, supra, 173 Conn. 175, this court held that the trial court had jurisdiction despite the plaintiffs' failure to appeal first to the zoning board of appeals. *Blum* was distinguished from other cases that had required the exhaustion of administrative remedies because "the plaintiffs [had] not [sought] review of adverse action taken by a zoning board; rather . . . they [had sought] to attack directly the actions of the defendants in using their property for impermissible purposes . . . ." Id., 180. That is precisely what the plaintiffs seek in this action. In other words, in this case, the plaintiffs have no quarrel with the variance that was granted; their sole claim is that the defendant had exceeded the variance. Therefore, just as in a case of an alleged violation of a zoning regulation or ordinance, the plaintiffs in this case should be permitted to seek relief directly from the Superior Court.

Similarly, in *State ex rel. Heimov* v. *Thomson*, 131 Conn. 8, 37 A.2d 689 (1944), this court permitted the plaintiff to petition the Superior Court directly for a writ of mandamus to compel the town clerk to certify the plaintiff's permit application for a nonconforming use. The court reasoned that "[t]he alternative remedies suggested by the defendant — . . . an application to the zoning board of appeals and an appeal from that board to the courts, if such a course is permissible under the zoning regulations—necessarily involve circuity of action and delay, and fall short of affording the plaintiff a means of effectively, conveniently and directly enforcing the performance of the particular duty owing to him." Id., 14; see *Brainard* v. *West Hartford*, 140 Conn. 631, 635, 103 A.2d 135 (1954). Therefore, it is well established that a party may seek equitable relief for a specific and peculiar injury without exhausting his administrative remedies.

The majority's decision troubles me, not only because it unfairly puts these plaintiffs out of court, but also because of its practical consequences. Property owners who have suffered a special and peculiar injury as a result of zoning violations have the right to invoke the jurisdiction of the courts in order to enjoin those violations. This necessarily includes the right to enjoin a party for violating a variance granted under such laws as well as the right to enjoin a party from exceeding the bounds of nonconforming uses. The majority, in order to reach its result today, places property owners in jeopardy of being unreasonably harmed by requiring that they wade through the administrative process.

Accordingly, I respectfully dissent.